**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

JAMES EARL HAWTHORNE,

    Plaintiff,

vs.                                             **CASE NO.  3:08cv154/MCR/MD**

BAPTIST HOSPITAL, INC.,

    Defendant.
_____/

**MOTION TO STRIKE PLAINTIFF'S STATEMENT OF FACTS
AND/OR AFFIDAVIT AS SHAM AND PROVIDING INADMISSIBLE
AND CONCLUSORY ALLEGATIONS, AND SUPPORTING MEMORANDUM**

Defendant, Baptist Hospital, Inc. (hereinafter "Defendant" or "BHI"), by and through its undersigned attorneys, moves the Court for an order striking Plaintiff's Statement of Facts (Doc. 96), and as well as Plaintiff's affidavit referenced in Plaintiff's Statement of Facts.[1] In support of this motion, defendant submits the following grounds and supporting memorandum as well as the attached second affidavit of Ms. Teresa Kirkland, excerpts from the depositions of Plaintiff, Ms. Kirkland, and Ms. Venus Jones, and selected exhibits from Plaintiff's deposition.

1. **The statement of facts is based on and relies on a purported affidavit of Plaintiff that has not been filed properly with the Court, and therefore there is no evidence or purportedly admissible evidence of record to substantiate Plaintiff's statement of facts**.

Both the Court's initial scheduling order and Local Rule 56.1(A) require:

---

[1] On July 13, 2009, Plaintiff filed a document purporting to be his affidavits (Doc. 97), but the document was legally insufficient for filing with the Court, resulting in the Court's entering an order of deficiency (Doc. 99) on July 14, 2009, and not permitting the document to be filed until a corrected document was filed with the Court. As of the filing of this motion, no such document or affidavit has been re-filed with the Court. At this late stage of these proceedings, with the submission deadline being today, the filing of the corrected affidavit (with or without any modifications) would be grossly untimely and unfair.

> The party opposing a motion for summary judgment shall, in addition to other papers or matters permitted by the rules, file and serve a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, in the format set for the above.

*See also* FED. R. CIV. PROC. 56(e)(2). Both the initial scheduling order and Local Rule 56.1(A) also provide:

> The statement shall reference the appropriate deposition, *affidavit*, interrogatory, admission, or other source of the relied upon material, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source.

In this instance, each paragraph of Plaintiff's statement of facts is not a direct response to Defendant's statement of undisputed facts, and also does not actually dispute Defendant's statements of facts with or without any reference to record evidence. Each of the paragraphs in Plaintiff's statement of facts simply refers to "AFFIDAVIT OF JAMES HAWTHORNE."

At 4:12 p.m. CDT today, Plaintiff filed a document purporting to be Plaintiff's affidavit (Doc. 106). The "affidavit" is not actually signed by Plaintiff, but instead purports to be an his "electronic signature." The "affidavit" is not sworn before a notary public, but instead purports to be a declaration under penalty of perjury. The use of an electronic signature of the type proffered as Plaintiff's signature on his affidavit is reserved under the Court's local rules only to authorized "Filing Users," which Plaintiff himself is not. N.D. FLA. LOC. R. 5.1(5), (7), (9). Affidavits and declarations filed electronically still require the affiant's or declarant's original signature on the electronic copy of the affidavit or declaration being filed. *Id.* at 5.1(9).

Because no valid or permissible affidavit has been timely filed or served in this case by Plaintiff, there is no proper record support for any of the purported material facts delineated in the Plaintiff's statement of facts. Therefore Plaintiff's statement of facts should be struck and completely disregarded by the Court. According, all of the material facts set forth in

Defendant's statement of facts should be deemed admitted by Plaintiff.  INITIAL SCHEDULING ORDER (Doc. 20) at 7, ¶ 10; N.D. FLA. LOC. R. 56.1(A).

**2. If the Plaintiff's affidavit (Doc. 106) were deemed filed or is re-filed, the averments in that affidavit should be stricken and disregarded by the Court on the grounds that either they are a sham because they are inconsistent with Plaintiff's sworn deposition testimony, or they are merely hearsay statements, conclusory averments, unfounded self-serving declarations, or pure speculation and conjecture, all of which are inadmissible and cannot create any genuine issues of material facts.**

An affidavit is considered a sham whenever the affiant (1) makes a conclusory, unexplained assertion regarding a material fact that (2) directly contradicts that person's unequivocal deposition testimony, without any further explanation for the testimony's disparity. *Lawver v. Hillcrest Hospice, Inc.*, 300 Fed.Appx. 768, 771-72 (11th Cir. 2008); *Akins v. Fulton County, Ga.*, 278 Fed.Appx. 964, 968 (11th Cir. 2008); *Van T. Junkins and Assocs. v. U.S. Industries*, 736 F.2d 656, 657 (11th Cir. 1984);   The United States Supreme Court has recognized that this is the law consistently held and applied by all U.S. Courts of Appeals:

> [A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.  [Citations omitted.]

*Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806-07, 119 S.Ct. 1597, 1603-04, 143 L.Ed.2d 966 (1999).

Additionally, an affidavit is required to set forth facts that show that the affidavit and its statements would be admissible in evidence.  FED. R. CIV. P. 56(e)(1).  Conclusory averments are improper in affidavits and do not constitute admissible evidence to be considered in summary judgment proceedings.  The United States Supreme Court in *Lujan v. National Wildlife Fed.*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990), has noted that the object of Rule 56 is not to replace conclusory allegations normally found in a pleading with conclusory averments in an affidavit.  *See also Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008); *Scaife*

*v. Cook County*, 446 F.3d 735, 740 (7th Cir. 2006); *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Unfounded, self-serving declarations by the plaintiff (non-moving party) that are simply conclusory and have not been supported by any factual information, data, or evidence are likewise inadmissible and cannot defeat a motion for summary judgment. *Delange v. Dutra Const. Co., Inc.*, 183 F.3d 916 (9th Cir. 1999); *Evans v. Technologies Applications & Services Co.*, 80 F.3d 954 (4th Cir. 1996); *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). It is fundamental that affidavits containing hearsay statements or speculation and conjecture are inadmissible and should be disregarded by the Court. *In re Slatkin*, 525 F.2d 805 (9th Cir. 2008); *Ward v. Int'l Paper Co.*, 509 F.3d 457 (8th Cir. 2007); *Stagman v. Ryan*, 176 F.3d 986 (7th Cir. 1999), cert. denied, 528 U.S. 986, 120 S.Ct. 446, 145 L.Ed.2d 363 (1999).

Each of the averments in Plaintiff's affidavit correspond to the like numbered paragraph of Plaintiff's statement of facts. Each such numbered averment is addressed seriatim in detail as follows:

Paragraph 1: Plaintiff makes the bald, conclusory claim that he experienced "a hostile and intimidating work environment," but his claims in this case are solely that he was allegedly subjected to age discrimination when he received his last wage rate increase in January 2006 and that he allegedly was subjected to unlawful retaliation when he was discharged for harassing Defendant's female employees. Along with this "hostile environment" allegation being merely an impermissible conclusory averment, it is also immaterial to the issues in this case. He also makes the allegation that he was subjected to retaliation when he was allegedly "wrongfully terminated" on February 23, 2006; however, during his deposition he provided no evidence and stated that he actually had no evidence that would show that Ms. Kirkland and Ms. Norris, the Defendant's human resources staff who decided or were the only managers involved in his

discharge, were motivated by any of his prior protected activities when they discharged him. All he has referred to in his deposition are incidents involving conflicts between him and only his past supervisors that occurred in 2003 and 2004, many of which occurred before he had been given any disciplinary action by the HR staff and many years before his discharge for harassing conduct. His supervisor, Billy Moss, was not involved whatsoever in the decision to discharge Plaintiff. (Aff. Teresa Kirkland ¶¶ 44-45) Plaintiff had no proof and has not provided any substantiation of his conclusory averment of retaliation or that the reason for his discharge was pretext. (Hawthorne Depos. at 195:5-200:17)

Paragraph 2:  Plaintiff makes the conclusory allegation that "he opposed discrimination against co-workers and [himself]," but his affidavit "testimony" is that he only made a request to Ms. Kirkland for some information about some employment data, which is not registering any opposition.  While he makes this conclusory and unsubstantiated self-serving statement, he provides no facts that support his claims in this case that his wage increases were because of age discrimination or that he was retaliatory discharged in 2006. (*See* Hawthorne Depos. at 195:5-200:17)  Indeed, Plaintiff is well aware from Ms. Kirkland's deposition taken by his attorney, that while Mr. Hawthorne had made a generalized request for information, Ms. Kirkland and the HR staff attempted to respond to his request, but Plaintiff was again uncooperative and refused to explain his reason and actual need for this personnel information for his work.  Mr. Hawthorne never made a complaint that this request and response was in anyway age discrimination or unlawful reprisal. (Kirkland Depos. at 39:7-41:6)

Paragraph 3:  The allegations in this paragraph are also conclusory and immaterial to this action.  In this paragraph 3 of his affidavit, Plaintiff attempts to allege that he was retaliated in 2006 because he raised a concern that employees in the Laundry Department were not paid for

the hours while they slept at the workplace when they were required during a 2004 hurricane to remain at work. Plaintiff explained that during the hurricane, he and other employees were instructed by their supervisor, Billy Moss, that they needed to remain at the hospital to assist with patients and that they would only get paid for the hours that they were awake and working. Plaintiff noted to Mr. Moss that he believed that the employees should also get paid for those hours when they were asleep at the workplace during the storm. Plaintiff testified in his deposition that Mr. Moss simply checked to see if Plaintiff was correct, he found out that the employees should get paid for the hours they were sleeping at the work premises, and the employees were paid. (Hawthorne Depos. at 162:13-164:14) Again, Mr. Moss was not a decision maker concerning Plaintiff's discharge. (Aff. Teresa Kirkland ¶¶ 44-45) Plaintiff goes on to make another conclusory and conjectural averment that is not substantiated by any evidence in the record and for which he has no evidence that he allegedly made a complaint to some unknown person (it is not even know if it was any representative of Defendant or simply some passerby) that the employees in Housekeeping and Food services did not get paid for "sleeping" hours. He testified in his deposition that he had no proof that those complaints, if they even occurred, motivated his discharge or any other employment decision by Defendant. (Hawthorne Depos. at 162:13-164:14)

Paragraph 4: Plaintiff never made any averment in his sworn deposition testimony that he now states in paragraph 4, and it is inconsistent with his deposition testimony. He provides no explanation why he failed to testify about this alleged incident in his deposition. Plaintiff states in his affidavit that he supposedly made a complaint, again to some unknown person, that African-American employees of Defendant were not receiving information about purportedly free generators from Defendant after a hurricane in 2005. Plaintiff specifically stated in his

deposition that other than confrontations that he had with his supervisors Mr. Moss and Mr. Gentry in 2004 (again, neither supervisor was involved in the decision to discharge Plaintiff in February 2006) and an inquiry or concern about pay in 2003 and 2004 to Ms. Jones, he had no other proof that his allegedly making these various complaints (some of which are not protected under the federal discrimination laws) motivated his discharge in 2006 instead of the claims of harassment by the female employees. (Hawthorne Depos. at 195:5-200:17) The actual facts about the availability of generators after the hurricane are that after Hurricane Dennis in July 2005, Baptist Health Care Corporation entered into an arrangement with Grainger Industrial Supply through which 50 or so electric power generators were to be offered to employees at a discounted cost of $550, and employees would be allowed to pay for the generators by a pay roll deduction of $50 per pay period. Baptist Health Care Corporation and Baptist Hospital, Inc. communicated this program throughout its facilities by email and by communications to employees by their supervisors. As a result of this program, 56 employees purchased generators at this discounted price, including 15 African-Americans (or 27% of the purchasers), some of whom were employed in the Environmental Services (Housekeeping), Food Services, and Linen Departments. (Second Aff. of Teresa Kirkland at ¶ 4)

Paragraph 5: Plaintiff alleges in paragraph 5 that an incident occurred involving a purported decision by some contractor of Defendant who supposedly discharged some African-American employees because of their criminal offense records. Plaintiff never made any averment in his sworn deposition testimony as he now states in paragraph 5, and it is inconsistent with his deposition testimony. He provides no explanation why he failed to testify about this alleged incident in his deposition. Plaintiff specifically stated in his deposition that other than confrontations that he had with his supervisors Mr. Moss and Mr. Gentry in 2004 (again, neither

supervisors was involved in the decision to discharge Plaintiff in February 2006) and an inquiry or concern about pay in 2003 and 2004 to Ms. Jones, he had no other proof that his allegedly making these various complaints (some of which are not protected under the federal discrimination laws) motivated his discharge in 2006 instead of the claims of harassment by the female employees. (Hawthorne Depos. at 195:5-200:17)  Additionally, this allegedly racial discrimination claim about criminal records has nothing to do with his current claims of age discrimination and unlawful retaliation before this Court.  It is immaterial.  Additionally, it is based on hearsay and lacks any supporting factual evidence that would elevate it beyond being merely an unsubstantiated conclusory statement and conjecture.

Paragraph 6: Plaintiff alleges in paragraph 6 that he purportedly made a complaint to some unknown person alleging that some women, ostensibly employees of Defendant, were "taking bodies to the morgue."  Plaintiff never made this averment in his sworn deposition testimony that he now states in paragraph 6, and it is inconsistent with his deposition testimony. He provides no explanation why he failed to testify about this alleged incident in his deposition. Plaintiff specifically stated in his deposition that other than confrontations that he had with his supervisors Mr. Moss and Mr. Gentry in 2004 (again, neither supervisors was involved in the decision to discharge Plaintiff in February 2006) and an inquiry or concern about pay in 2003 and 2004 to Ms. Jones, he had no other proof that his allegedly making these various complaints (some of which are not protected under the federal discrimination laws) motivated his discharge in 2006 instead of the claims of harassment by the female employees. (Hawthorne Depos. at 195:5-200:17)   Additionally, to the extent that this allegation attempts to make a gender discrimination claim, it has nothing to do with his current claims of age discrimination and unlawful retaliation before this Court.  It is immaterial.  Additionally, this claim and Plaintiff's

conclusory averment that Defendant resented his having complained about the women's work is based on hearsay and lacks any supporting factual evidence that would elevate it beyond being merely an unsubstantiated conclusory statement and conjecture.

Paragraph 7: Plaintiff alleges in paragraph 7 that he purportedly "opposed discrimination" (apparently to some unidentified person) and allegedly assisted a female employee of Defendant with her employment discrimination complaint against Defendant. Plaintiff never made this averment in his sworn deposition testimony that he now states in paragraph 7, and it is inconsistent with his deposition testimony. He provides no explanation why he failed to testify about this alleged incident in his deposition. Plaintiff specifically stated in his deposition that other than confrontations that he had with his supervisors Mr. Moss and Mr. Gentry in 2004 (again, neither supervisors was involved in the decision to discharge Plaintiff in February 2006) and an inquiry or concern about pay in 2003 and 2004 to Ms. Jones, he had no other proof that his allegedly making these various complaints (some of which are not protected under the federal discrimination laws) motivated his discharge in 2006 instead of the claims of harassment by the female employees. (Hawthorne Depos. at 195:5-200:17)  Additionally, Plaintiff fails to provide any substantiation or factual support that would connect this matter involving the female employees with any of the decision makers in his case. There are no facts that would prove that any of the persons who were the decision makers pertaining to his wages or his discharge had any knowledge of his alleged "opposition" or involvement with this female employee's claims. This averment has nothing to do with his current claims of age discrimination and unlawful retaliation before this Court and is immaterial. Additionally, Plaintiff's conclusory averment in this paragraph 7 is based on hearsay and lacks any supporting

factual evidence that would elevate it beyond being merely an unsubstantiated conclusory statement and conjecture.

Paragraph 8: In paragraph 8, Plaintiff simply states that he became aware of a complimentary letter from a family member about him. After several verbal and written requests, he received a copy of this letter. Nevertheless, his makes an unsubstantiated and conclusory statement and adds his conjecture that "Human Resources" tried to keep this letter from him, even though he explains that it was Human Resources Manager Jones who provided him the copy. This matter is immaterial to his claims of age discrimination and retaliation and does not involve any adverse employment action. (*See* Hawthorne Depos. at 195:5-200:17)

Paragraph 9: The allegations in paragraph 9 are merely unfounded, self-serving declarations by Plaintiff that are impermissibly conclusory and are not supported by any factual information, data, or evidence in the record. He alleges that "five older women"—who are unidentified, whose ages are unknown, and whose job positions are unidentified—received only $7.00 per hour while some unidentified, purportedly younger employees (whose ages are not specified and whose job positions are not identified) are alleged to get "better pay." While more specific supporting facts might make this information relevant and material, Plaintiff has not shown that any of these employees are similarly situated to him and has not provided any testimony or other evidence that would factually demonstrate any age discrimination. All he has furnished is his own speculation and conclusory allegation that some younger employees got paid more than five older women.

Paragraph 10: Plaintiff made no claim and provided no testimony in his deposition or in his affidavit regarding any facts that might support his conclusory averment in paragraph 10 about Ms. George's pay. (*See* Hawthorne Depos. at 195:5-200:17) Moreover, the averment

made in paragraph 10 by its own description shows that it is inadmissible hearsay and has no materiality to his claim of age discrimination associated with his wage rate increase in January 2006 (there is no proof that Ms. George was a Washman II, for instance) or his discharge in February 2006.

Paragraph 11: Plaintiff's allegations in paragraph 11 of the affidavit and statement of facts are inconsistent with his testimony in his deposition, and he provides no explanation in his affidavit for changing any material facts and for omitting material facts from his affidavit about which he testified in his deposition. First, Plaintiff admitted in his deposition that Ricky Johnson and Harold Fountain were not Washmen II like the Plaintiff, but instead were Washmen I. (Hawthorne Depos. at 350:11-22, 354:4-11) He also admitted that Mr. Johnson's previous raise was only $0.34 per hour (or seven cents more than Plaintiff's rate increase), and as a result Mr. Johnson's hourly pay as a Washman I increased from $6.94 per hour to $7.28 per hour, while Plaintiff's pay rate had changed from $9.00 per hour to $9.27 per hour. (Hawthorne Depos. at 353:23-355:5, and Exhibit 21) Thus, Plaintiff continued to make more pay than Mr. Johnson by $1.99 per hour (or over 27% more than Mr. Johnson). Plaintiff also admitted that Mr. Fountain's previous raise was only $0.38 per hour (or eleven cents more than Plaintiff's rate increase), and as a result, Mr. Fountain's pay increased from $7.57 per hour to $7.95 per hour. (Hawthorne Depos. at 350:2-351:10 and Exhibit 19) Plaintiff therefore continued to be paid more than Mr. Fountain by $1.35 per hour (or 17% more than Mr. Fountain). Second, Plaintiff admitted that Alphonse Nuniss was a younger Washman II, who actually had more seniority in the position than Plaintiff. His raise in pay in 2006 was from $8.10 per hour to $8.43 per hour, or only $0.33 per hour (six cents more than Plaintiff's rate increase). (Hawthorne Depos. at 331:5-22, 345:15-346:11, and Exhibits 15 and 17) Thus, Plaintiff pay rate was still higher than Mr. Nuniss' rate by

$0.84 per hour (or 10% more than Mr. Nuniss). Third, Plaintiff admitted that Ms. Payne and Ms. Smith received promotions to linen service leaders, not supervisors, at the end of 2005, before Plaintiff was discharged and before he had been harassing Ms. Smith at the end of January 2006. (Hawthorne Depos. at 119:2-124:25)

Paragraph 12: Plaintiff made no claim and provided no testimony in his deposition or in his affidavit regarding any facts that might support his conclusory averment in paragraph 12 about another person's pay or about some unknown and unidentified administrator of Defendant who purportedly made a racial slur. (*See* Hawthorne Depos. at 195:5-200:17) Moreover, the averments made in paragraph 12 by their own descriptions show that they are inadmissible hearsay and have no materiality to his claim of age discrimination associated with his wage rate increase in January 2006 or his discharge in February 2006. He has also averred inadmissible hearsay statements and facts from 2008, two years after his discharge for harassing female workers.

Paragraph 13: Plaintiff made no claim and provided no testimony in his deposition or in his affidavit regarding any facts that might support his conclusory averment in paragraph 13 about Ms. Willie Mae Jones' pay. (*See* Hawthorne Depos. at 195:5-200:17) Moreover, the averment made in paragraph 13 by its own description shows that it is inadmissible hearsay and has no materiality to his claim of age discrimination associated with his wage rate increase in January 2006 (there is no proof that Ms. Jones was a Washman II, for instance, or that she was otherwise similarly situated as Plaintiff or had the same supervisors) or his discharge in February 2006.

Paragraph 14: Plaintiff's allegations in this paragraph have no materiality to this lawsuit. Plaintiff's delivery in March 2004, almost 2 years before his discharge, of a package of materials

concerning the safety concerns he had previously raised to Defendant's management has no relationship or materiality to his age discrimination claim or his claim of a retaliatory discharge. Plaintiff has provided no proof nor is there any proof in the record that Mr. Stubblefield had any involvement at all in the decision to discharge Plaintiff or to increase his pay. Moreover, his deposition testimony made no assertion that he complained to Mr. Stubblefield about "retaliation" or described any retaliation as alleged in the affidavit, instead he simply mentioned that he wanted to Mr. Stubblefield to read through the materials that purportedly addressed "harassment and stuff" that Plaintiff believed he was experiencing:

```
 9     Q    This occurred back in March of 2004, around
10  that time?
11     A    I think so.
12     Q    Okay.  All right.
13     A    So then while I was sitting there, they also
14  said in that same meeting about Al Stubblefield, because
15  I've been trying to see Al Stubblefield about complaining
16  about the stuff what I been going through, how I been
17  speaking out and stuff.  So they told -- I told them I
18  wanted to see him myself to pass -- pass -- to give him the
19  facts myself.
20         And Teresa Kirkland said -- Venus said that --
21  well, Teresa Kirkland, I think, more than anything, that,
22  "Well, we not -- we were going to let you set a meeting with
23  you -- I think with Stubblefield, but we're not going to --
24  we're not going to set a meeting.  You give us the
25  information, and we'll give it to him."
 1         I said, "No, I want to give it to him myself."
 2         She said, "Well, we're not going to let you
 3  see him."
 4         Then on -- after 2004, employee told me that,
 5  "If they wouldn't -- if they won't let you see" -- I can't
 6  remember the employee's name.  "If they won't let you see
 7  Stubblefield," she say -- heard her say, "go meet him at the
 8  Tower, he come in the Towers, I think, around six o'clock or
 9  something, and you can give it to him yourself."
10         So one morning I got up like -- like
11  five-something or six o'clock in the morning, and I went to
12  the Tower, and I stayed around till he come.  That's when I
13  saw him at the elevator.  I said, "I'm James Hawthorne.
```

```
14  I've been trying to get in contact with you."  I said, "Is
15  it an open-door policy to see you?"
16          He said, "Yeah."
17          I said, "Teresa Kirkland" -- I said,
18  "Personnel won't let me see you."  So I said, "Here's a
19  paper I want you read -- *I appreciate you reading, stuff
20  I've been going through, harassment and stuff."*  So I
21  handed it to him, and he went up the elevator.
```

(Hawthorne Depos. at 166:9-167:21) (emphasis supplied.)  Paragraph 14 is both inconsistent with the deposition testimony and not material to the pending issues before the Court.  (*See also* Kirkland Depos. at 41:7-45:14)

Paragraph 15:  Plaintiff made no claim and provided no testimony in his deposition or in his affidavit regarding any facts that might support his conclusory averment in paragraph 15 about some unknown employee.  (*See* Hawthorne Depos. at 195:5-200:17)  Moreover, the averment made in paragraph 15 by its own description shows that it is inadmissible hearsay and has no materiality to his claim of age discrimination associated with his wage rate increase in January 2006 or his discharge in February 2006.

Paragraphs 16, 17, and 18:  Plaintiff's self-serving and conclusory remarks about his alleged conversations and telephone calls with Ms. Venus Jones are not supported by any factual information or data.  Moreover, Ms. Jones has testified that she was not involved in the decision to discharge Plaintiff and did not participate in the meeting during which he was discharged.  (Jones Depos. at 22:2-5)  She also was not previously aware that Ms. Betty Smith had made a complaint against Plaintiff for harassment until Plaintiff had requested that Ms. Jones attend a meeting with Plaintiff, Ms. Kirkland, and Ms. Norris, in which an investigation was being conducted into Ms. Smith's allegations against Plaintiff.  (Jones Depos. at 19:8-21:22)  When Ms. Jones encountered Plaintiff at local credit union, she confronted him with his having stated to the federal or state agencies that she had told him that Defendant had put or was going to put a

bomb under his truck. Ms. Jones testified that Plaintiff laughed and denied that he ever made that statement. (Jones Depos. at 22:6-23:19) But during his deposition, Plaintiff admitted that he had in fact claimed to the EEOC that Defendant was going to place a bomb under his truck. (Hawthorne Depos. at 472:1-6) During this conversation at the credit union, Plaintiff also asked Ms. Jones why she had not been interviewed by the EEOC, and she responded that she did not know. (Jones Depos. at 24:3-11) Ms. Jones recalls greeting Plaintiff at the hospital cafeteria line some time after his discharge, but she never had a conversation with him before his discharge at the cafeteria, nor anywhere else, on a telephone or cell phone during which she told Plaintiff that Defendant was trying to set him up "to be fired or terminated"; that Plaintiff needed to "watch out for Vivian, Marilyn, and Holly; that indicated that some mail addressed to Ms. Jones was being opened by Ms. Kirkland; or that "they were going to put a bomb underneath his truck, mess around and put a bomb underneath his truck." (Jones Depos. at 25:19-26:1, 28:6-29:18) Ms. Jones only called Plaintiff twice on his cell phone: the first time to arrange for his performing lawn care service for her (without any discussion about employment matters); and the second time, when she returned a "missed call" from Plaintiff. She called the number for the "missed call" because she did not recognize it, and Plaintiff answered. Plaintiff informed Ms. Jones that he had a question but he had already obtained the information he needed, so they ended the conversation and hung up. (Jones Depos. at 26:2-28:5)

  Paragraph 19: The averments in this paragraph 19 are inconsistent with Plaintiff's deposition, and he has failed to provide any explanation for the disparity. Although Plaintiff initially testified in his deposition, as he now avers in paragraph 19 of his affidavit, that he believed that Ms. Payne and Ms. Smith obtained their promotions to linen service leaders because they allegedly helped Defendant in "setting Plaintiff up for his discharge," Plaintiff

changed his deposition testimony when he was confronted with the undisputed fact that both of these ladies became linen service leaders a month or more before Plaintiff's discharge and his unwelcomed and offensive touching of Ms. Smith in the parking lot of the hospital. (Hawthorne Depos. at 119:2-125:11)  Plaintiff admitted in his deposition that what he stated under penalty of perjury in his amended charge filed with the Florida Commission on Human Relations and the EEOC was untrue about Ms. Smith's and Ms. Payne's "being given promotions and lead positions after [Plaintiff's] termination," thereby also making his next allegation in the amended charge false that "the hospital requested they [Ms. Smith and Ms. Payne] bring these [harassment] charges against me and then they [Defendant] rewarded them for it." (Hawthorne Depos. at 436:18-437:19 and Exhibit 30)  Paragraph 19 is a classic example of a sham affidavit statement.

Paragraph 20:  Plaintiff's averments in paragraph 20 of his affidavit are inadmissible hearsay and immaterial to the issues in this case.  He has not provided any sworn statements by the unidentified employees or even Ms. Smith.  The facts are undisputed that Plaintiff refused to participate in and provide any defense during the investigation of the allegations made against him in January 2006 by Ms. Linda Moorer (and the employees at Baptist Manor) and by Ms. Smith about Plaintiff's unlawful touching and kissing her in the hospital parking lot.  (Def. Statement of Facts at ¶¶ 40, 42, 44 [previously filed]; Hawthorne Depos. Ex. 26 [previously filed]; Hawthorne Depos. at 379:03-381:16; 386:17-386:07; 388:03-15 [previously filed]; Aff. Teresa Kirkland at ¶ 40 [previously filed]; Jones Depos. at 19:12-21:22)  His averment in paragraph 20 is simply an after-the-fact, self-serving statement, which is full of hearsay. Paragraph 20 is his vain attempt to now present some form of defense to the undisputed facts of

his misconduct that justified and warranted his discharge. As previously argued in Defendant's memorandum in support of its motion for summary judgment:

> Plaintiff may attempt to proffer excuses or reasons now in this lawsuit why he acted the way he did in January 2006 towards these women. He may even try to now dispute the facts upon which his discharged was based. But that is insufficient as a matter of law to overcome the overwhelming undisputed and uncontroverted evidence in this case that at the time of his discharge, there was substantial evidence for Defendant and its HR staff to honestly believe that he had engaged in the misconduct about which Ms. Moorer, the Baptist Manor employees, and the victim of sexual harassment complained. It is the decision maker's perception at the time of making the employment decision that is relevant, and the Court's inquiry here is not whether the reason for the discharge is correct, but whether the supervisors honestly believed those reasons when they made the decision to discharge Plaintiff. *Ranson v. Center for Nonprofit Advancement*, 514 F.Supp. 18, 28-29 (D.D.C. 2007); *see Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001); *cf. Ezold v. Wolf, Block, Schorr and Solis-Cohen,* 983 F.2d 509, 547 n. 38 (3d Cir. 1992) (Law firm was allowed to rely on its own subjective assessment of employee's legal ability in making partnership decision and permitting law firm to err in that assessment, as long as error was not based on unlawful discrimination).
>
> In essence, Plaintiff is now estopped from simply challenging the legitimacy of Defendant's decision and claiming it was pretext when he purposely refused to challenge the serious and consequential sexual harassment (and battery) allegations made against him when given the opportunity to do so before he was discharged. At the time that Defendant determined that Plaintiff's egregious conduct warranted discharge, there was ample evidence and information to justify the decision. All of the complaints and testimony were independently and voluntarily provided to Defendant by the victims, and those circumstances had no relationship, nexus, or causal connection to any protected activities in which Plaintiff alleges he was engaged over the period he was employed with Defendant.
>
> Plaintiff cannot permissibly be allowed to now challenge the reasons for his discharge when he intentionally refused to do so when he was discharged and when he also chose not to make any complaint of any retaliation or discrimination to Defendant under BHI's EEO policies and procedures. Defendant legitimately and justifiably discharged Plaintiff, and summary judgment in favor of Defendant on Plaintiff's retaliation is warranted.

**Local Rule 7.1(B) Certificate**: Defendant's attorney conferred with Plaintiff's attorney, discussed the improprieties, inadmissibility, and the sham nature of Plaintiff's statements in his affidavit, and noted that the deposition testimony should be reviewed to consider modifying the

affidavit statements before re-filing Plaintiff's affidavit when correcting the deficiencies identified by the Court's deficiency order (Doc. 99). Based on the filing of Plaintiff's affidavit (Doc. 106) late this afternoon without any corrections or changes from what was originally served (Doc. 97), this motion has been necessitated. It is also apparent that Plaintiff opposes this motion.

WHEREFORE, Defendant respectfully requests the Court to grant this motion; strike and disregard Plaintiff's affidavit and statement of facts; and accordingly render summary judgment in favor of Defendant.

Respectfully submitted,

/s/ Ralph A. Peterson
RALPH A. PETERSON
Florida Bar No. 303021
BEGGS & LANE RLLP
501 Commendencia Street (32502-5953)
Post Office Box 12950
Pensacola, Florida 32591-2950
Telephone:     (850) 432-2451
Telefacsimile: (850) 469-3331

Attorneys for Defendant
Baptist Hospital, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that this motion has been filed and served on August 10, 2009, by Notice of Electronic Filing pursuant to Rule 5(b)(2)(D), Federal Rules of Civil Procedure, and Local Rule 5.1(A)(6) on Plaintiff's attorney, Christine C. Hardin, Esquire of Christine C. Hardin, P.A., 3 West Garden Street, Suite 204, Pensacola, Florida 32502.

/s/ Ralph A. Peterson
RALPH A. PETERSON
Florida Bar No. 303021
BEGGS & LANE RLLP
501 Commendencia Street (32502-5953)
Post Office Box 12950
Pensacola, Florida 32591-2950
Telephone:     (850) 432-2451
Telefacsimile: (850) 469-3331