**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**JAMES EARL HAWTHORNE,**

        **Plaintiff,**

**v.**                                  **Case No. 3:08cv154/MCR/MD**

**BAPTIST HOSPITAL, INC.,**

        **Defendant**.

_____/

## O R D E R

    James Earl Hawthorne filed this suit against his former employer, Baptist Hospital, Inc., asserting claims of age discrimination, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), and retaliation, in violation of both the ADEA, § 623(d) and Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000e-3(a).[1]  Pending before the court is Baptist Hospital's motion for summary judgment (doc. 87), which Hawthorne opposes (doc. 95).  Additionally, Baptist Hospital has moved to strike the plaintiff's statement of facts and/or his affidavit (doc. 107), which Hawthorne also opposes (doc. 110).   Having considered the record and the parties' arguments, the court grants Baptist Hospital's motion for summary judgment and grants in part and denies in part the motion to strike.

**Background**

    Hawthorne was discharged from his employment with Baptist Hospital on February 23, 2006.  The notice of discharge states Hawthorne violated Baptist Hospital's "No Harassment Policy" and an earlier final warning, which resulted from complaints that he

---

[1]  In a prior order ruling on a motion to dismiss, the court, adopting the report and recommendation of Magistrate Judge Miles Davis (doc. 54), dismissed Hawthorne's claims under the Florida Civil Rights Act, the Americans with Disabilities Act, and the EEOC Compliance Manual, as well as a claim of "hostile work environment."  (Doc. 62.)

had been harassing co-workers during work time.  In September 2006, Hawthorne filed a discrimination charge with the United States Equal Employment Commission (EEOC) and the Florida Commission on Human Relations, alleging age discrimination and retaliation on the basis of race and age.  After a "no cause" determination on his administrative complaints,[2] Hawthorne filed this age discrimination and retaliation suit, claiming he received a raise lower than that given to younger employees in his department and that his discharge was related to a lawsuit  he filed against Baptist Hospital in 2005 and also his repeated opposition to Baptist Hospital's discriminatory employment practices.

Baptist Hospital moved for summary judgment, maintaining that Hawthorne's raise was consistent with Baptist Hospital's Merit Increase Guidelines and not evidence of age discrimination and setting forth facts of a nonretaliatory reason for his discharge.

**Motion to Strike**

In opposition to summary judgment, Hawthorne submitted only his own, 21-paragraph affidavit, which Baptist Hospital moves to strike on several grounds, discussing each paragraph individually.[3]  In general, Baptist Hospital asserts that the affidavit should be stricken because portions are inconsistent with Hawthorne's sworn deposition testimony, contain inadmissible hearsay, and amount to speculation or conclusory statements that are not competent to withstand a properly supported summary judgment motion.  Federal Rule of Civil Procedure 56(e) provides that affidavits submitted in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(e)(1).  An affidavit that does not meet these requirements is subject to a motion to strike or may be disregarded by the court for its failure to meet the standard of Rule 56(e).  *See Givhan v. Elec. Eng'rs,*

---

[2] Hawthorne voluntarily dismissed his Florida Commission on Human Relations complaint before his administrative hearing was held; thus, the "no cause" determination stands as the Commission's final determination.  (Doc. 13-4.)  The EEOC adopted the state agency's determination.

[3] Additionally, Baptist Hospital argues that the affidavit is deficient because it is not signed by hand or sworn before a notary public and the statement of facts is deficient because it does not specifically refer to record evidence by page and paragraph number.  The court finds it unnecessary to reach these arguments.

*Inc.*, 4 F. Supp. 2d 1331, 1334 (M.D. Ala. 1998). The court need not strike an affidavit in its entirety but "may strike or disregard improper portions and consider the remainder of the testimony or statement." *Dortch v. City of Montgomery*, No. 2:07cv1034, 2010 WL 334740, at *1 (M.D. Ala. Jan. 22, 2010). An affidavit that is inherently inconsistent with sworn deposition testimony may be disregarded as a sham. *See Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 658-59 (11th Cir. 1984). Conclusory averments in an affidavit opposing summary judgment that do not set forth specific facts are insufficient to defeat a proper motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1218 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.") (internal marks omitted). Additionally, although generally "inadmissible hearsay cannot be considered on a motion for summary judgment," *Macuba v. Deboer* 193 F.3d 1316, 1322 (11th Cir. 1999) (internal marks omitted), hearsay that is reducible to admissible evidence may properly be considered, *id.* at 1323.

In opposition to the motion to strike, Hawthorne defends only paragraphs 11 and 16-18. In these paragraphs, Hawthorne states the following:

> 11. My last raise was .27 cents before my termination. At least three younger workers, Alfonzo, Ricky, and Harold, in [their] twenties, received a .40 cent or more raise. My manager, Billy Moss, who highly praised me, wrote that I am the best worker he has and recommended me for the next supervisor position. Yet, Betty Smith and Linda Payne received the promotion. Supervisors Wendell Cole and Charles Posey also praised my work to the EEOC, so I do not see why I received a .27 cent raise and younger workers received a .40 cent raise. Also, manager Billy Moss showed me a different pay scale from which Defendant relies and told me what I was supposed to earn. When I requested a copy of the pay scale, Billy Moss told me that I could not have a copy and that he (Billy Moss) would get in trouble if HR found out that I had received this information. Billy Moss told me that "it is wrong for what they were doing." [*sic*]

> 16. After I was put on a final warning for alleged harassment, I received a phone call on my cell phone at 5:38 p.m. from the phone number 850-324-1055 belonging to Venus Jones, HR representative at Baptist Hospital, Inc. Venus asked me if I had recently sent her any mail. I replied "not to my knowledge." Venus Jones said the reason for the question is

because while she was in with Theresa Kirkland, she noticed some mail on Teresa Kirkland's desk with my name on it, and Venus Jones thought that the mail was from me. Venus Jones stated that Teresa Kirkland moved the mail so that Venus Jones could not see the mail, but Venus Jones did see that the mail did have my name on it. Venus Jones stated that Teresa Kirkland was opening Venus Jones' mail especially when the mail was addressed from me. Venus Jones stated that (her boss) thinks that Venus Jones is giving me information to help his case. Venus Jones told me that "they are trying to set you up on a harassment charge so watch who you talk to and don't trust anyone especially Marlynn, Holley and Vivian who all work in housekeeping. Holley told personnel that you were looking at her up and down so don't do anything other than speak to them." That ended the conversation. Approximately two or three months later, I was terminated for alleged harassment.

17. On another occasion after the alleged final warning, I was sitting in the cafeteria talking to Venus Jones about the different ways defendant was mistreating its employees. One statement made to me by Venus Jones that upset me is "The hospital is going to mess around and put a bomb under your truck." I perceived this as a threat to keep quiet and stop opposing discrimination.

18. Defendant[4] spoke with Venus Jones on another occasion after my termination regarding my complaints. On this occasion, Defendant saw Venus Jones at a local bank and briefly discussed my complaint stemming from the allegation of this lawsuit. Both me and Venus Jones was concerned that no person from the Florida Human Relations Commission had contacted Venus Jones for a statement.

(Doc. 106.)

Baptist Hospital moves to strike paragraph 11 because the facts asserted are inconsistent with Hawthorne's sworn deposition testimony, and as such, it is a sham. The court finds, however, that the inconsistencies set forth by Baptist Hospital are minor and immaterial or resulted from Hawthorne's mere omission of certain facts from the affidavit that he provided or admitted in his deposition. Thus the court will not strike the paragraph

---

[4] The context of this paragraph indicates Hawthorne may have intended to say "Plaintiff" each time he said "Defendant" in this paragraph.

as a sham.[5]  Additionally, as Hawthorne points out, Baptist Hospital does not address that portion of paragraph 11 in which he asserts his supervisor Moss showed him a different pay scale, refused to provide him with a copy of it, and made a comment to Hawthorne to the effect that Baptist Hospital's conduct was wrong.  Baptist Hospital's motion to strike does not allege any inconsistency regarding this statement, and it appears to be based on Hawthorne's personal knowledge.  For these reasons, the court will deny the motion to strike paragraph 11.

Baptist Hospital moves to strike paragraphs 16-18 on grounds that these statements, which concern Hawthorne's alleged conversations and telephone calls with Venus Jones, contain self-serving and conclusory remarks, unsupported by any factual information or data and are contradicted by Jones's affidavit.  The court will not engage in credibility determinations on summary judgment.  *See Anderson*, 477 U.S. at 249.  The court will deny the motion to strike paragraphs 16-18.

Hawthorne does not respond to Baptist Hospital's arguments regarding the remaining paragraphs of his affidavit.  With a few exceptions, the court agrees with Baptist Hospital's arguments.  The court finds that the averments in paragraphs 2, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 20, and 21 of Hawthorne's affidavit fail to meet the standards of Rule 56(e) because they are irrelevant, conclusory or speculative in nature, or contain inadmissible hearsay, and thus the court will grant the motion to strike these paragraphs.[6]

---

[5]  For example, Baptist Hospital argues that Hawthorne's assertion about the younger washmen receiving a higher raise is inconsistent because Hawthorne admitted in his deposition that two of the younger workers were not in the position of Washman II like Hawthorne.  The affidavit, however, is simply silent regarding what position the younger workers held, so the court will not infer an inherent inconsistency.  Baptist Hospital also argues that Hawthorne's assertion in his affidavit that younger employees all received a raise of $.40 or more contradicts his deposition testimony in which he admitted their raises were a few cents less than that.  This minor discrepancy is immaterial because there is no dispute that the younger employees' raises were larger than Hawthorne's raise.  Finally, Baptist Hospital argues that Hawthorne's affidavit contradicts his deposition testimony wherein he admitted that Payne and Smith were promoted *prior* to his discharge.  The court finds no inherent inconsistency because the affidavit simply states they were promoted; it does not allege *when* they were promoted.

[6]  Paragraph 2 states that Hawthorne "opposed discrimination" by requesting certain information, but the only act asserted is that he requested information about how many minorities worked in administrative positions, and Baptist Hospital denied the request; this does not evidence age discrimination or retaliation.  The court will not consider paragraphs 4, 5, 6, 7, 8, 9, 10, and 13 because Hawthorne provides no facts

The court, however, denies the motion to strike paragraphs 1, 3, 11, 16, 17, 18, and 19.[7]

**Motion for Summary Judgment**

Facts

For the limited purposes of this summary judgment proceeding, the court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party," in this case, Hawthorne. *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1256 (11th Cir. 2008) (internal marks omitted). Hawthorne, an African American, began his employment in the linen services/laundry department of Baptist Hospital on January 22, 2001, in the position of Washman I. In 2005, he was promoted to the position of Washman II, and in February 2006, he was discharged on allegations that he had been harassing co-workers in violation of Baptist Hospital's anti-harassment policy and a final written warning that had been issued to Hawthorne in May 2004.

Baptist Hospital presented evidence that its pay plan and salary structure is comprised of a series of pay grades, each with a corresponding salary range depending on the job. The Washman I position is within Pay Grade 7, and the Washman II position is within Pay Grade 9. Each pay grade is further divided into three zones. Baptist Hospital's pay plan includes a Merit Increase Guideline, which specifies a particular percentage of salary increase an employee may be entitled to, depending on his or her job

---

showing any discrimination against him; his statement that he "opposed discrimination" is conclusory. Paragraph 12's statement that an unknown and unidentified administrator made a racial slur indicating an intent to retaliate against those who filed a class action against Baptist Hospital is inadmissible hearsay; also paragraph 12 includes broad allegations of the pay given to various other employees in different departments at various times with no allegation of any actions Hawthorne took in opposition to what he alleges to be discrimination. Paragraph 14 is vague and immaterial to his claims of discrimination and retaliation because it alleges only that Hawthorne provided Baptist Hospital's CEO with some "materials" about "retaliation" on May 28, 2004, and never heard back from him. Paragraph 15 alleges that Hawthorne "opposed discrimination" but does not substantiate the conclusion with any facts. Additionally, paragraphs 15 and 20 include allegations of inadmissible hearsay that an unidentified "female employee" told him a supervisor was angry with him and disliked him and that several unidentified employees told Hawthorne Betty Smith had admitted helping get him fired. Finally, paragraph 21 is a general denial of the facts set forth by the defendant; a party may not rest on a general denial to oppose a properly supported motion for summary judgment. *See* Fed. R. Civ. P. 56(e)(2).

[7] While the court denies the motion to strike these affidavit paragraphs on the Rule 56(e) grounds asserted in the motion to strike, the court reserves the right to disregard any of these statements in the summary judgment discussion on grounds of relevance or a lack of probative value.

performance rating and pay zone. The lower range of a pay grade, classified as Zone I, is typically paid to newly hired employees and an employee in that zone who receives the highest job performance rating of "exceeds standards" may be awarded a 4 - 5% raise. Zone 2 is in the mid-range of the salary grade, and an employee in this zone who exceeds standards may receive a merit increase of 3 - 4%. Zone 3 includes the higher range of the salary grade, and those who exceed standards in this zone my receive a merit increase of 2 - 3% of their salary.

In each annual performance review, Hawthorne's supervisors rated his job performance as meeting or exceeding standards, and, with one exception, this resulted in a 3% raise for Hawthorne each year.[8] In January 2004, Hawthorne was classified as a Washman I, Pay Grade 7, Zone 3. His supervisor, Billy V. Moss, Linen Services Director rated Hawthorne's job performance as exceeding standards and, consistent with the Merit Increase Guideline for his pay grade and zone, awarded him a 3% merit increase, which raised his pay by $.24 to $8.18 per hour.[9] At the next annual performance review in January 2005, Moss again rated Hawthorne's performance as exceeding standards and promoted him to Washman II with a 10% promotional increase, resulting in an $.82 raise to $9.00 per hour.[10] The following year, in January 2006, one month prior to his termination, Moss again rated Hawthorne's job performance as exceeding standards on the annual performance evaluation and awarded him a 3% salary increase – the highest merit increase permissible under the guidelines for Hawthorne's position at Pay Grade 9,

---

[8] The one exception was a 10% raise in 2005, when he was promoted to Washman II. Older pay records indicate that in 2002, Hawthorne received a 3% merit increase, resulting in a $.22 raise (from $7.23 to $7.45 per hour); in 2003, he received a 3% merit increase, resulting in a $.22 raise (from $7.45 to $7.67 per hour); and at some point after the 2003 performance review but before the 2004 performance review, Hawthorne's salary increased another $.27 (from $7.67 to $7.94 per hour).

[9] Venus Jones, Human Relations Manager, stated in an affidavit that Hawthorne met with her to review his 2004 performance evaluation but made no complaint of age discrimination.

[10] Subsequently, Baptist Hospital discovered that this 10% wage increase erroneously exceeded its promotional guidelines and caused a disparity between Hawthorne's rate of pay and two other Washman II employees who had more seniority than Hawthorne, Worthy Lockett (who was older than Hawthorne) and Richard Grace (who was younger than Hawthorne). The record demonstrates that instead of reducing Hawthorne's pay to the correct level, Baptist Hospital made an equitable and retroactive pay adjustment to raise the rate of pay for the two employees with more seniority.

Zone 3 on the pay scale. This raised Hawthorne's rate of pay by $.27 to $9.27 per hour.

The record demonstrates that in 2006, Moss gave all of the washmen the maximum increase permitted by the Merit Increase Guidelines for their pay grade and zone. Younger Washman II employees, Richard Grace, age 38, and Alphonse Nuniss, age 24, were both classified within Pay Grade 9, Zone 2.[11] They each received raises larger than Hawthorne's raise because their lower pay bracket permitted them to receive a 4% merit increase. Their wages, however, remained less than Hawthorne's.[12] The other younger employees, Rickey Johnson, age 24, and Harold Fountain, age 22, held the position of Washman I within Pay Grade 7, Zone 1. They each received a 5% merit increase following their "exceeds standards" performance review rating, as permitted under the guidelines for their lower Zone 1 salary bracket, also resulting in a larger raise than Hawthorne received despite their lower overall wage.[13]

Teresa B. Kirkland, Director of Human Resources for Baptist Hospital, states in her affidavit that soon after Baptist Hospital employees received training on its No Harassment Policy in May 2004, the human resources department began receiving complaints by employees at Baptist Manor Nursing Home ("Baptist Manor") that Hawthorne was harassing them during work hours. Linda Moorer, a housekeeping employee at Baptist Manor, complained that Hawthorne was calling her during work, once pretending to be her husband and leaving messages and asking her if she knew about different people getting into trouble or getting fired at Baptist Manor Nursing Home. Kirkland's investigation of this complaint revealed that Hawthorne had been placing telephone calls to Moorer and two other employees who also complained of his conduct. According to these employees, Hawthorne would call or leave a message, sometimes identifying himself and other times

---

[11] The only Washman II employee with the same Grade 9, Zone 3 classification as Hawthorne was Worthy Lockett, age 52, who received a 3% merit increase, the same as Hawthorne. Because Lockett's wages are higher than Hawthorne's, however, this same percentage increase resulted in a one-cent higher raise for Lockett, whose pay increased $.28, from $9.38 per hour to $9.66 per hour.

[12] Grace received a $.34 increase, raising his rate of pay to $8.82 per hour. Nuniss received a $.33 increase, raising his rate of pay to $8.43 per hour.

[13] Johnson received a $.34 increase, raising his rate of pay to $7.28 per hour. Fountain received a $.38 raise to $7.95 per hour.

Case No. 3:08cv154/MCR/MD

purporting to be someone else such as a family member of a Baptist Manor resident.  The employees complained that Hawthorne was interfering with their work by questioning them during work regarding whether they knew of certain alleged events at Baptist Hospital or certain alleged employment practices.  In one instance, another housekeeping employee, Nethalia Dortch, complained that Hawthorne had called her over to his truck in the parking lot and told her that many African Americans were being fired from the housekeeping department.  According to Dortch, Hawthorne purported to be obtaining information about white employees and seeking information about an incident in which he said a resident was slapped and Baptist Hospital took no action.  Kirkland said Dortch reported being scared and intimidated by Hawthorne's conduct and false accusations.[14]

On May 24, 2004, Kirkland and Human Resources Manager Venus Jones met with Hawthorne to discuss his conduct and issued a notice of disciplinary action and written final warning for his violation of Baptist Hospital's anti-harassment policy and disrupting other employees on the job.  They informed Hawthorne that any further violations of Baptist Hospital's policies could result in his being discharged from his employment and instructed him not to contact these employees again or to engage in communications with other employees that could be perceived as harassing.  Hawthorne refused to sign the warning.

Kirkland states that despite the warning, three female employees complained in late July 2004 that Hawthorne was bothering them during work hours.  Holly Seahy, a housekeeping department employee, complained that Hawthorne had approached her while she was working and told her about other employees getting higher pay or clocking out early and Hawthorne told her he and others were getting together for a meeting.  Seahy felt Hawthorne was bothering her and others during work and complained that she wanted him to stop disrupting her during work.  A few days later, Marilyn Silver, an Environmental Services Team Leader in the housekeeping department complained she felt threatened by Hawthorne who approached her and spoke in what she perceived to be a disruptive manner, asking if she knew which employees made more money than she.  She reported being concerned he was trying to "stir the pot" in the housekeeping department, causing

---

[14]  Dortch thought he might have been recording their conversation.

unrest among employees by making inaccurate statements that implied the existence of salary disparities and soliciting personal information from employees. Silver requested that Hawthorne be instructed not to interfere with housekeeping staff. The same day, the Linen Services Manager reported that one of his workers, Mattie L. Charley, had complained that Hawthorne's was spreading false or inaccurate information regarding the wages of Linen Services employees.

On July 30, 2004, Jones and Kirkland met with Hawthorne again to discuss the recent complaints about his behavior. Records indicate they coached him on how to conduct himself with fellow employees, proper procedures for resolving workplace concerns or issues and avoiding disrupting the workplace. The coaching documentation worksheet references the final warning given on May 24, 2004, and notes that further complaints may lead to the termination of Hawthorne's employment. Hawthorne refused to sign the document. From the end of July and throughout 2005, Baptist Hospital records show no further complaints about Hawthorne's conduct. During that time, he was promoted to the position of Washman II and commended for exceeding standards in his job performance.

In January 2006, Linda Moorer, who had complained in 2004 of Hawthorne's conduct, again complained to Kirkland about him. Moorer complained that she had learned from two other employees that Hawthorne had been making inquiries about whether they knew a nurse named Linda and told them she had gotten him in trouble with Baptist Hospital; he was inquiring about how he could contact her. Moorer reported being afraid of Hawthorne and wanted no more confrontations with him. After an investigation substantiated the claim, Kirkland concluded that Hawthorne had again engaged in harassing behavior in violation of Baptist Hospital's anti-harassment policy and his final warning. Hawthorne denied the incident but refused to provide any facts or statements to rebut the claim. Another complaint in January 2006 alleged Hawthorne had harassed a co-worker named Betty Smith by attempting to kiss her on the mouth. Smith attested in a written statement that Hawthorne had made advances toward her, tried to kiss her, but she objected and blocked his conduct, resulting instead in him kissing her on the forehead.

Kirkland provided Hawthorne an opportunity to rebut the claim, but he did not deny the allegations and provided no statement or information about the incident. He stated simply that Betty Smith needed to tell the whole truth, but he refused to make a statement himself.

Kirkland states that based on these complaints and Hawthorne's refusal to provide any information or defense to refute the allegations, she determined he had violated the terms of his final warning and the anti-harassment policy. Kirkland and Baptist Hospital's Vice President of Human Resources Celeste Norris discharged Hawthorne from employment on February 23, 2006. Hawthorne refused to sign the notice of discharge.

Hawthorne claims that Baptist Hospital discriminated against him on the basis of his age, giving him a smaller raise than younger employees in the linen department. He also asserts that his supervisor, Moss, once showed him "a different pay scale" and told him what he was "supposed to earn," but refused to provide him a copy of it. In his affidavit, Hawthorne asserts Moss feared he (Moss) would "get in trouble in HR found out" that Hawthorne had received the information and states Moss told him, "it is wrong for what they were doing." (Doc. 106, at ¶ 11.)

Hawthorne also claims his termination in February 2006 was based on retaliation for his repeated opposition over the years to Baptist Hospital's discriminatory pay practices, which he says included a lawsuit against Baptist Hospital in 2005 that he voluntarily dismissed and a class action suit, which was also dismissed.[15] As evidence of his conduct of speaking out, Hawthorne refers to an incident during Hurricane Ivan in the summer of 2005 when he complained to his supervisor, Moss, that employees who were required to be present should be paid even for those hours when they were asleep. Moss looked into

---

[15] Hawthorne does not state when he filed the class action suit or when it was dismissed. (*See* Doc. 106, at ¶ 1.) Additionally, Jones stated in her affidavit that in March 2004, Hawthorne informed her that he had submitted a complaint to the Joint Commission on Accreditation of Healthcare Organizations and the Florida Agency for Health Care Administration regarding alleged safety violations at Baptist Hospital. The complaint did not raise allegations of age or racial discrimination but questioned compliance with the procedure for processing dirty linens, and Hawthorne informed Jones that he went to these outside agencies because he thought Baptist Hospital was not moving fast enough on his two prior complaints to Baptist Hospital in which he raised these concerns. Jones's affidavit states that, unknown to Hawthorne, Baptist Hospital was responding to his safety complaints and suggestions by making safety reviews and taking remedial safety measures; she states that the Joint Commission on Accreditation of Healthcare Organizations subsequently found Baptist Hospital to be in compliance.

it and agreed, and the employees in Hawthorne's department received the appropriate pay.[16]

Hawthorne also states that at some time after he was given a final warning for his harassing conduct, Human Resources Manager Venus Jones told him Baptist Hospital was "trying to set [him] up on a harassment charge," so he should be careful not to do anything other than speak to them; he states that she warned, "don't trust anyone especially Marlyn, Holley and Vivian who all work in housekeeping."  Hawthorne says he was fired for harassment not long after.[17]  (Doc. 106, at ¶ 16.)  Hawthorne further asserts that on another occasion, Jones said, "The hospital is going to mess around and put a bomb under your truck," which Hawthorne perceived as a threat to keep him from opposing discrimination.[18]  (Doc. 106, at ¶ 17.)  Finally, Hawthorne asserts that Baptist Hospital rewarded Betty Smith (who had complained about him kissing her in January 2006) and another employee, Linda Payne, with a promotion "for their involvement in assisting to get me fired."  (Doc. 106, at ¶ 19.)

Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[T]he plain language of Rule 56(c) mandates the entry of summary

---

[16]  In his affidavit, Hawthorne also asserts that despite his act of "speaking out" on this matter, the housekeeping and food service departments, which employ many African Americans, were only paid for the time they were awake.  (Doc. 106, at ¶ 3.)

[17]  The court disregards as irrelevant Hawthorne's statements in paragraph 16 regarding Teresa Kirkland opening Jones's mail.  These allegations have no bearing on his claim of discrimination nor do they provide a basis on which to infer a retaliatory animus.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").

[18]  Hawthorne also states in paragraph 18 of his affidavit that at some time *after* his termination, he spoke with Venus Jones about his complaints.  He does not identify what they discussed, except to say "discussed my complaint stemming from the allegation of this lawsuit" and that they were both concerned that no one from the Florida Human Relations Commission had contacted Jones for a statement.  (Doc. 106, at ¶ 18.)  The court finds this paragraph to be wholly irrelevant to his claims that Baptist Hospital discriminated against him on the basis of age or retaliated against him by terminating his employment.  Accordingly, the court will disregard paragraph 18.  *See Anderson*, 477 U.S. at 248.

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir.1995).

In the summary judgment context, the moving party must first set forth the basis for its motion, identifying facts as to which there is no genuine dispute. *Celotex*, 477 U.S. at 323. "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (also noting "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude" summary judgment). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Whenever the nonmoving party has presented "sufficient, competent evidence" to support his or her version of the disputed facts, the court will resolve disputes in the plaintiff's favor. *See Pace v. Capobianco*, 283 F.3d 1275, 1276 (11th Cir. 2002). But, the court will not make credibility determinations or weigh the evidence presented. *Anderson*, 477 U.S. at 249; *Frederick v. Sprint/United Mgm't Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001). Finally, "'the mere existence of a scintilla of evidence'" supporting the nonmoving party's position will not be adequate to resist a properly supported summary judgment motion; "'there must be evidence on which the jury could reasonably find for the non-movant.'" *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) (quoting *Anderson*, 477 U.S. at 252) (other internal marks omitted).

ADEA Discrimination Claim

The ADEA makes it unlawful to discriminate in employment on the basis of age by failing to hire, discharging an individual, "or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To show disparate treatment under the ADEA, the plaintiff must demonstrate either direct or circumstantial proof of a discriminatory motive on the part of the employer. *MacPherson v. Univ. of Montevalo*, 922 F.2d 766, 774 (11th Cir. 1991). As direct evidence of a discriminatory motive, Hawthorne states in his affidavit that his supervisor, Moss, once showed him a different pay scale and told him what he was "supposed to earn," Moss refused to give him a copy of the other pay scale, and Moss feared he would be in trouble if the human relations department knew Hawthorne had seen the information. Hawthorne asserts that Moss said, "it is wrong for what they were doing." (Doc. 106, at ¶ 11.) Even assuming the truth of this assertion, it is not direct evidence of age discrimination. Moss's comments make no mention of age nor do they indicate that an alternate lower pay scale or lower merit increase guideline existed for Hawthorne *because* of *his age*.

To establish a *prima facie* case of age discrimination in compensation through circumstantial evidence, the plaintiff must show that (1) he is a member of the protected age group (i.e., persons between the ages of 40 and 70); (2) the plaintiff received lower wages; (3) similarly situated persons outside the protected age group received higher wages; and (4) the plaintiff was qualified to receive the higher wages. *See MacPherson*, 922 F.2d at 774 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the plaintiff makes this showing, "the burden then shifts to the employer 'to articulate some legitimate, nondiscriminatory reason' for the employer's action." *Id.*; *see also Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). Once met, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the articulated reason was a mere "'pretext for discrimination.'" *MacPherson*, 922 F.2d at 774 (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "Although a plaintiff's burden in proving a *prima facie* case is light, summary judgment against the plaintiff is

appropriate if he fails to satisfy any one of the elements of a *prima facie* case." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432-33 (11th Cir. 1998) (internal citations omitted), *cert. denied*, 525 U.S. 962 (1998). For reasons that follow, the court concludes Hawthorne has failed to satisfy the elements of a *prima facie* case of age discrimination.

Hawthorne has not shown he received lower wages than a similarly situated person outside the protected age group. None of the younger washmen earned a higher wage than Hawthorne. He asserts that his receipt of a lower raise than the younger washmen constitutes age discrimination, but he cannot demonstrate that the younger washmen were similarly situated to him for purposes of awarding merit increases. They each received an "exceeds standards" performance review, as did Hawthorne, but none of the younger employees was classified as a Washman II, Grade 9, Zone 3, like Hawthorne, for purposes of annual merit increases under Baptist Hospital's Merit Increase Guidelines. The younger Washman II employees – Richard Grace (age 38) and Alphonse Nuniss (age 24) – were categorized within Pay Grade 9, Zone 2, which entitled them to a 4% merit increase but a lower overall wage. Other employees younger than Hawthorne – Rickey Johnson (age 24) and Harold Fountain (age 22) – were in the position of Washman I and categorized in Pay Grade 7, Zone 1, which entitled them to a 5% merit increase under the guidelines but a lower overall wage than Hawthorne's. Hawthorne's Grade 9, Zone 3 classification entitled him, at most, to a 3% merit increase. "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). Hawthorne has not demonstrated that the younger workers were appropriate comparators. Summary judgment is appropriate where the plaintiff fails to demonstrate "the existence of a similarly situated employee," and "no other evidence of discrimination is present." *See id*. at 1092 (emphasis omitted).

Even assuming the younger employees in the position of Washman II were sufficiently situated to Hawthorne to be appropriate comparators, Hawthorne's *prima facie* case fails because he cannot demonstrate that he was qualified to receive a higher raise under Baptist Hospital's pay plan. Moss awarded Hawthorne a 3% merit increase, which

was the highest permissible for his pay grade and zone.  To qualify for a higher percentage merit increase under the guidelines, Hawthorne would have to be making a smaller overall wage.  Baptist Hospital presented evidence showing it uniformly applied the Merit Increase Guidelines, and Hawthorne presented no evidence that he was not categorized in the correct pay grade or zone or that age discrimination played any part in the creation or application of the guidelines.  In short, Hawthorne's salary increases were consistent with the hospital's salary policy and there is no evidence the compensation policy created a disparate impact on older workers.  *See D'Aquino v. Citicorp/Diner's Club, Inc.*, 755 F. Supp. 218, 221-22 (N.D. Ill. 1991) (finding no inference of age discrimination where the company's pay policy permitted larger salary increases for lower paid workers).

Hawthorne attempts to demonstrate that a different pay scale should have been applied to him, but his only evidence is his affidavit statement that Moss showed him a different pay scale.  Hawthorne does not explicitly assert that there was a different pay scale for *older* employees or that there was a different pay scale under which Hawthorne was entitled to a *higher* raise.  Also, the cryptic statement attributed to Moss that "it is wrong for what they were doing," provides no evidence either that Hawthorne was entitled to a higher raise or that his raise was less because of discrimination on account of his *age*.[19]  Accordingly, Hawthorne has not set forth a prima facie case of age discrimination or any material issue of fact to preclude summary judgment on this claim, and Baptist Hospital is entitled to summary judgment.

Retaliation Claim

Retaliation is prohibited under both the ADEA, 29 U.S.C. § 623(d), and Title VII, 42 U.S.C. § 2000e-3(a).  Under the ADEA, it is unlawful for an employer to retaliate against an employee who "has opposed any practice made unlawful by this section" or who "has made a charge, testified, assisted, or participated in any many in an investigation, proceeding, or litigation under this chapter."  29 U.S.C. § 623(d).  Similarly, Title VII

---

[19]  Hawthorne's affidavit also states that Betty Smith and Linda Payne received a promotion, but he does not make any allegation regarding their ages or whether he was in fact qualified for the promotion. Accordingly, this assertion is not probative evidence on his age discrimination claim.

prohibits retaliation against an employee because the employee has opposed unlawful discrimination or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Where, as here, there is no direct evidence of retaliation, the traditional burden-shifting framework of *McDonnell Douglas* applies. *See Hairston v. Gainesvile Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (noting the *McDonnell-Douglas* analysis of Title VII applies also to ADEA claims); *see also Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979) (construing the ADEA and Title VII in the same manner). Because the legal analysis is the same with respect to both claims, the court need not analyze each claim separately. *See Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1267 n.6 (11th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141-42 (2000)).

A *prima facie* case of retaliation requires a showing that the plaintiff (1) engaged in statutorily protected activity, such as opposing discrimination on the basis of age or race, (2) suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). Once the plaintiff establishes a *prima facie* case, the employer must then "articulate a legitimate, non-retaliatory reason for the challenged employment action." *Id.* If met, the burden then shifts back to the plaintiff to show pretext, and "the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 256. Pretext requires a showing by a preponderance of the evidence that the articulated reason for the adverse employment action was not the true reason – either by evidence that the decision was more likely motivated by a retaliatory motive or by indirectly showing that the proffered reason was not worthy of credence. *Id.*; *see also Pennington*, 261 F.3d at 1266.

In this case, Hawthorne has not set forth any evidence showing a causal connection between his alleged protected activity and his discharge to make out a *prima facie* case of retaliation. The most recent protected activity asserted is that Hawthorne filed a lawsuit at some unspecified time in 2005 and opposed an allegedly discriminatory practice in the summer of 2005, approximately six months before Kirkland and Norris made the decision to discharge him on the basis of complaints of harassment lodged in January 2006.

However, because "[t]he causal link element is construed broadly," *Pennington*, 261 F.3d at 1266, Baptist Hospital argues that even assuming he established a *prima facie* case, Hawthorne cannot demonstrate pretext. The court agrees.

Baptist Hospital has set forth a legitimate, nondiscriminatory reason for Hawthorne's discharge, namely, that he violated its anti-harassment policy and his final warning. *See Corbitt v. Home Depot U.S.A., Inc.*, 589 F.3d 1136, 1161-62 (11th Cir. 2009) (concluding employer set forth a legitimate reason for discharge by stating that the employees were terminated for violating the company's standard operating procedures and code of conduct). Hawthorne must then demonstrate pretext. "A plaintiff raises a genuine issue of material fact concerning pretext if the plaintiff casts sufficient doubt on the defendant's proffered non-retaliatory reasons to permit a reasonable fact finder to conclude that the employer's proffered reasons were not what actually motivated its conduct but were pretext for retaliation." *Id.* at 1162.

Hawthorne attempts to show pretext solely through his own affidavit, but it presents no evidence that Baptist Hospital's reason for his termination is unworthy of credence. Hawthorne's affidavit attributes to Venus Jones a statement warning him that Baptist Hospital was trying to "set him up" on a harassment charge; he asserts she cautioned, "don't do anything other than speak" to three individuals named Marlynn, Holley and Vivian in housekeeping. (Doc. 106, ¶ 16.) Hawthorne also alleged in his affidavit that Jones told him "[t]he hospital [wa]s going to mess around and put a bomb under [his] truck," which he perceived as a threat to stop his opposition to discriminatory practices. (Doc. 106, at ¶ 17.) These alleged statements by Jones do not constitute substantially sufficient competent evidence to overcome Baptist Hospital's properly supported motion for summary judgment. Only "sufficient, competent evidence" that supports the nonmoving party's version of disputed facts will be resolved in his favor. *Pace*, 283 F.3d at 1276. An affidavit based on mere belief or "conclusory allegations without specific supporting facts have no probative value" and are therefore insufficient to create a genuine issue of material fact. *Leigh*, 212 F.3d at 1217. Hawthorne's affidavit does not deny that he engaged in the harassing conduct that was the basis for his discharge. His conclusory statement that he was told

of a "set up," or his assertion that Jones told him the hospital might put a bomb under his truck, which he states he believed was intended to stop him from opposing discrimination, lack specific supporting facts for the alleged plots or their motivation, or are based on mere belief, and  therefore have little probative force.  His assertion that he was warned not to talk to certain people does not give rise to an inference that his own harassing conduct was not the true reason for his discharge.  Additionally, the affidavit makes no assertion from which a trier of fact reasonably could infer that the decisionmakers, Kirkland and Norris, knew of these statements or alleged plots.

Hawthorne also states in his affidavit that Smith and Payne were rewarded with a promotion "for their involvement in assisting to get me fired," (doc. 106, ¶ 19), and he argues this demonstrates that his discharge was based on a retaliatory motive.  The undisputed facts in the record demonstrate, however, that Smith and Payne were promoted two months *prior* to Hawthorne's discharge and one month *prior* to the harassing conduct Hawthorne undeniably engaged in, which was the basis of his termination.  Thus, this allegation does not raise an inference of pretext or a retaliatory motive for his discharge.  No issue of material fact exists where "the evidence is merely colorable or is not significantly probative."  *Anderson*, 477 U.S. at 249 (internal citation omitted).

Hawthorne's affidavit does not show that his harassing conduct was not the true reason for his discharge nor does it provide evidence sufficient to give rise to an inference of a retaliatory motive in his discharge.  The role of the federal court in this instance is to remedy unlawful discrimination or retaliation; "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions."  *Chapman*, 229 F.3d at 1030 (internal marks omitted).  Rather, this court's "inquiry is limited to whether the employer gave an honest explanation of its behavior."  *Id.* (internal marks omitted).  Hawthorne has not presented competent, probative evidence to discredit Baptist Hospital's legitimate reason for his discharge.  Baptist Hospital, therefore, is entitled to summary judgment on this claim.

Accordingly, it is hereby ORDERED:

1.      Defendant's motion for summary judgment is GRANTED.  The clerk shall

enter final judgment accordingly, with costs taxed against the plaintiff.

2.     Defendant's motion to strike Plaintiff's statement of facts and/or affidavit is GRANTED in part, and DENIED in part.

**DONE AND ORDERED** this 25th day of February, 2010.


*s/ M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**